HAROLD S. MYERS AND WILLIAM G. CAMPBELL, APPELLANTS, V. THE BANK OF NIOBRARA, A NEBRASKA STATE BANKING CORPORATION, APPELLEE.

336 N.W.2d 608

Filed July 29, 1983. No. 82-495.

Frank A. Taylor of Kutak Rock & Huie, for appellants.

John M. Peebles, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

HASTINGS, J.

Harold S. Myers and William G. Campbell, the plaintiffs, commenced this action by filing a petition for declaratory judgment in the District Court of Knox County. They sought to have the District Court declare that any obligation they had under guaranty agreements with the defendant, Bank of Niobrara, be discharged due to the bank's actions.

The bank answered and counterclaimed for the amount it claims is due it under the guaranty agreements between the bank and the plaintiffs. The District Court found in favor of the bank, awarding $14,586.65. We affirm.

On appeal the plaintiffs assign three errors to the decision of the District Court. They claim the court erred in its interpretation of the guaranties given by plaintiffs to the bank; the court erred in failing to consider evidence showing the bank improperly released and surrendered the collateral which secured the loans guaranteed by the plaintiffs; and the court erred in failing to find that the evidence and relevant law completely discharged plaintiffs' obligations under these guaranties.

A brief discussion of the relevant facts will aid in an understanding of this appeal. On September 16, 1976, the plaintiffs each executed and delivered to the bank loan guaranty agreements guaranteeing subsequent loans made to one Frank Brown up to

$30,000. On September 18, 1976, Frank Brown, doing business as Brown Seed & Supply Co., borrowed $26,920.27 from the Bank of Niobrara. This loan was secured by a security interest in the warehouse receipts covering the seed and grain purchased with the money loaned. Under the agreement between the bank and Brown, Brown was to store the seed and grain purchase with Nytco Services, Inc., a bonded warehouse. When Brown wanted to sell some of this collateral, he would tender a check for 85 percent of the purchase price to the bank, and the bank would then order Nytco to release the desired seed or grain.

Two other loans were made to Brown, for $2,023 on October 4, 1976, and for $10,004.50 on October 7, 1976, under the same arrangement. A renewal loan of $21,780.62 was extended on April 26, 1977, which replaced the outstanding balance of the prior loans between Brown and the bank. Another renewal loan of $13,481.36 was extended on March 23, 1979. A final renewal loan of $14,586.65, which is evidence of the debt at issue here, was extended on January 2, 1980.

On or about May 1, 1980, Brown declared bankruptcy, and the bank made demand upon the plaintiffs, under the guaranty agreements, to pay the sum of $14,586.65 due under this final renewal note.

Plaintiffs claim the bank improperly released the collateral which secured the loans made to Brown. From the record it appears that the bank released the vast majority, if not all, of the collateral in the possession of the warehouseman, Nytco.

Plaintiffs argue that because the bank released the collateral it thereby deprived plaintiffs of the ability to proceed against that collateral to satisfy any debt incurred as a result of these guaranties. Plaintiffs claim their obligation is therefore discharged.

It may be true that if a secured party, such as the bank, impairs a guarantor's ability to satisfy any obligation arising under the agreement of guaranty by

releasing the collateral securing that loan, said guarantor's obligation is then released. However, we find we need not reach this question, as the plaintiffs waived any right to object to such release.

The loan guaranty agreement on its face waived any objection and assented to the acts of the bank. In relevant part it reads: "For Value Received and to enable Frank Brown of Stuart, Nebrsaka [sic], hereinafter designated as 'Debtor,' to obtain credit, from time to time, of Bank of Niobrara, Niobrara, Nebraska, we hereby request said Bank to extend to said Debtor such credit as said Bank may deem proper, and we hereby jointly and severally guarantee the full and prompt payment to said Bank at maturity, and at all times thereafter, and also at the time hereinafter provided, of any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank, and every balance and part thereof, whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced, to the extent of Thirty Thousand and no/100 - - - - - Dollars . . . .

"All diligence in collection, and all presentment for payment, demand, protest, notice of protest, and notice of non-payment, dishonor and default, and of the acceptance of this guaranty, and of any and all extensions of credit hereunder, are hereby expressly waived.

"The granting of credit from time to time by said Bank to said Debtor in excess of the amount of this guaranty and without notice to the undersigned, is hereby authorized and shall in no way affect or impair this guaranty.

"Authority and consent are hereby expressly given said Bank from time to time, and without any notice to the undersigned, to give and make such extensions, renewals, indulgences, settlements and compromises as it may deem proper with respect to any of the indebtedness, liabilities and obligations covered by this guaranty, including the taking or

*releasing of security* and surrendering of documents." (Emphasis supplied.)

A more clear and absolute guaranty can hardly be imagined. This guaranty expressly authorized the bank to extend additional credit and release the security for these loans without notice to the plaintiffs. In short, plaintiffs waived any objections to the bank's action in this case by signing these agreements.

As we said in *Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply, Inc.*, 195 Neb. 292, 298, 237 N.W.2d 645, 649 (1976), a case cited to us by both parties: "The general rule is that a surety or guarantor is entitled to be subrogated to the benefit of all the security and means of payment under the creditor's control and, therefore, in the absence of *assent, waiver*, or estoppel, he is generally released by an act of the creditor which deprives him of such right." (Emphasis supplied.)

It cannot be doubted that in this case the plaintiffs assented to the actions taken by the bank and waived any objections by signing the loan guaranty agreements. We therefore find the decision of the District Court to be correct, and affirm that decision.

AFFIRMED.